POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA BAYLOR, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR COMPANY, INC., TOSHIHIRO MIBE, TAKAHIRO HACHIGO, and KOHEI TAKEUCHI, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Rhonda Baylor ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Honda Motor Co., Ltd. ("Honda" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Honda American Depository Shares ("ADSs") between June 20, 2018 and September 28, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Honda is a multinational conglomerate manufacturer of automobiles, motorcycles and power equipment.  The Company's U.S.-based operations are conducted through its North American subsidiary, American Honda Motor Company, Inc. ("American Honda").

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

3.     Certain of Honda's vehicles—including the 2018-2020MY Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, 2015-2020MY Acura TLX, and 2015-2020MY Acura MDX—include a so-called "Idle Stop" engine feature, purportedly to enhance fuel efficiency.  In marketing these vehicles, Honda and/or its subsidiaries have highlighted the Idle Stop system's purported capacity to automatically shut off a vehicle's engine to save fuel when the vehicle brakes to a stop for at least two seconds—for example, at a traffic light—and to automatically restart the engine when the driver releases the vehicle's brake pedal.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Honda had overstated the safety and effectiveness of the Idle Stop engine feature; (ii) Honda maintained deficient disclosure controls and procedures with respect to product quality and safety; (iii) as a result of the foregoing deficiencies, Honda failed to prevent American Honda from marketing and selling thousands of vehicles that contained a defective Idle Stop feature; (iv) the foregoing conduct subjected the Company and/or its subsidiaries to a heightened risk of litigation, as well as financial and/or reputational harm; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

5.     On September 28, 2022, a putative class action was filed against American Honda alleging that it had sold thousands of vehicles—including the 2018-2020 Honda Odyssey, 2016-2020 Honda Pilot, 2019-2020 Honda Passport, 2015-2020 Acura TLX, and 2015-2020 Acura MDX—equipped with a flawed Idle Stop feature.[1]  Per the allegations in the class action complaint, after initially shutting off a vehicle's engine, the Idle Stop system in the affected vehicles routinely fails to restart the engine as designed, leaving drivers unable to move their vehicles.  The lawsuit further alleges that American Honda was fully aware of the defect before marketing the vehicles.

6.     On this news, Honda's ADS price fell $0.74 per share, or 3.23%, to close at $22.19 per ADS on September 29, 2022.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

---

[1] *Cooper et al v. American Honda Motor Co., Inc.*, No. 1:22-cv-05299 (N.D. Ill.)

4

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  American Honda is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Honda ADSs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Honda is organized under the laws of Japan with principal executive offices located at 1-1, Minami-Aoyama 2-chome, Minato-ku, Tokyo 107-8556, Japan.  Honda's ADSs trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "HMC".

14.     Defendant American Honda is the Company's North American subsidiary and maintains its principal executive offices in Torrance, California.

5

15.     Defendant Toshihiro Mibe ("Mibe") has served as Honda's President, Chief Executive Officer ("CEO"), and Representative Director since April 1, 2021.

16.     Defendant Takahiro Hachigo ("Hachigo") served as Honda's President, CEO, and Representative Director from before the start of the Class Period to April 1, 2021.

17.     Defendant Kohei Takeuchi ("Takeuchi") has served as Honda's Chief Financial Officer at all relevant times.  Defendant Takeuchi also currently serves as Honda's Executive Vice President and a Director of the Company.

18.     Defendants Mibe, Hachigo, and Takeuchi are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Honda's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Honda's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Honda, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

6

# SUBSTANTIVE ALLEGATIONS

## Background

20.     Honda is a multinational conglomerate manufacturer of automobiles, motorcycles and power equipment.   The Company's U.S.-based operations are conducted through its North American subsidiary, American Honda.

21.     Certain of Honda's vehicles—including the 2018-2020MY Honda Odyssey, 2016-2020MY Honda Pilot, 2019-2020MY Honda Passport, 2015-2020MY Acura TLX, and 2015-2020MY Acura MDX—include a so-called "Idle Stop" engine feature, purportedly to enhance fuel efficiency.  In marketing these vehicles, Honda and/or its subsidiaries have highlighted the Idle Stop system's purported capacity to automatically shut off a vehicle's engine to save fuel when the vehicle brakes to a stop for at least two seconds—for example, at a traffic light— and to automatically restart the engine when the driver releases the vehicle's brake pedal.

## Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on June 20, 2018, when Honda filed an annual report on Form 20-F with the SEC during pre-market hours, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended March 31, 2018 (the "2018 20-F").  In discussing "Management's Challenges and Preparing for the Future," the 2018 20-F stated, in relevant part:

1.    Product Quality

     To strengthen customer trust by offering products founded in safety and achieve a new level of outstanding quality of products, Honda has created a system that continuously enhances and improves quality at every stage: design, development, production, sales and service. Honda will work to improve product quality by implementing a shared global quality management system and by providing training and education aimed at improving the skills of employees involved in quality assurance.

2.    Research and Development

     In addition to engaging in traditional Mono-zukuri (the art of making things), Honda will work on the advancement of "mobility" and improvement of "people's daily lives" for people all over the world through the integration of Mono-zukuri and Koto-zukuri (new experiences drawn from the art of making things), with a new value that works cooperatively with people. Honda views that the expansion of possibilities of new value creation accompanying the evolution of digital technologies, such as AI and big data, in recent years presents a good opportunity. As such, Honda will actively pursue open innovation through strategic collaboration mainly with outside companies and further focus on research and development in new areas.

***

5.    Safety Technologies

     With the aim of realizing a collision-free mobile society, Honda will work actively in partnership with communities to build and improve the traffic environment in three areas: "Human (Safety Driving Education)," "Technology (Vehicle Safety Technologies)" and "Communication (Telecommunication Networks)."

     Honda will nurture instructors for safety education, provide places and opportunities to learn, and develop educational programs and equipment, while making efforts to improve safety technologies that enhance accident prediction and prevention, technologies to help reduce the risk of injuries to passengers and pedestrians from car accidents, and enhance technologies to reduce the impact on the other

8

vehicle, as well as expanding its lineup of products incorporating such technologies.

Honda will also make efforts to improve safety by means of a system that can confirm traffic conditions in surrounding areas and traffic accident risks using wireless communication to connect with other cars and motorcycles as well as people in surrounding areas who are carrying smartphones.

***

7.     Continuing to Enhance Honda's Social Reputation and Communication with the Community

In addition to continuing to provide products incorporating Honda's advanced safety and environmental technologies, Honda will continue striving to enhance its social reputation by, among other things, strengthening its corporate governance, compliance, and risk management, as well as participating in community activities and making philanthropic contributions.

Through these company-wide activities, Honda aims to be a company that society, which includes our shareholders, our investors and our customers, wants to exist.

23.    Further, with respect to Honda's evaluation of its disclosure controls and procedures, the 2018 20-F stated, in relevant part:

Under the supervision and participation of our management, including our Chief Executive Officer and Chief Financial Officer, we performed an evaluation of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the U.S. Securities Exchange Act of 1934) as of March 31, 2018. Based on that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of that date.

24.    The marketing materials for Honda's vehicles published throughout the Class Period consistently touted their safety profile and technologies.    In the

9

brochure for the 2018 Pilot, American Honda stated that the Pilot "has achieved top ratings from NHTSA and IIHS[] and is equipped with innovative safety and driver-assistive technology including available Honda Sensing,® a suite of features that can assist and help you sense things you might miss while driving."[2]

25.     Likewise, in the brochure for the 2018 Odyssey, American Honda stated that the Odyssey is the "most sophisticated, technologically advanced minivan yet," "[a]t the forefront of safety," and "designed to achieve top ratings from NHTSA and IIHS, and features a full suite of available safety and driver-assistive technologies to help protect you and your passengers."[3]

26.     On January 29, 2019, Honda issued a "2019 Honda Passport Press Kit" which stated, in relevant part:

**Idle-Stop System**
To help improve fuel efficiency, all Passports are equipped with Idle-Stop capability. When the system is enabled by the driver and certain operating conditions are met, the Idle-Stop system will automatically shut off the engine when the vehicle comes to a stop. The engine is automatically restarted when the driver releases the brake pedal after a stop.

The system has been engineered to operate smoothly and seamlessly. Fully integrated with the second-gear launch mode, its programming and brake pressure trigger ensure quick restarts when accelerating immediately after engine stop, making the system less noticeable in heavy traffic and similar driving situations. The air conditioning has been reconfigured as well to reduce engine restarts. Additionally, when in idle stop, the engine remains off after shifting to Park for a more

---

[2] https://www.hondainfocenter.com/2018/Pilot/Feature-Guide/Printable-References/
[3] https://cdn.dealereprocess.org/cdn/brochures/honda/2018-odyssey.pdf

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

intuitive driving experience. When stopped, a special cold storage evaporator in the air conditioning system helps maintain a comfortable cabin temperature even in warm weather. Passport's active engine mounts help smooth the restart. Idle-Stop operation is fully integrated into the operation of the Brake Hold system and available Adaptive Cruise Control (ACC).

\*\*\*

As with all Honda vehicles, the 2019 Passport is designed to provide a high level of safety performance, starting with predictable and stable driving dynamics that help drivers maintain control over their vehicle in a wide variety of driving environments and circumstances, including emergency avoidance maneuvers.

Contributing to Passport's active safety performance is a comprehensive range of features that include Vehicle Stability Assist™ (VSA®)1 with Traction Control, Motion-Adaptive Electric Power Steering (EPS), Brake Assist, 4-Channel ABS with Electronic Brake Distribution. Passport's available i-VTM4™ all-wheel-drive system with dynamic torque vectoring adds an additional degree of handling prowess and all-weather control.[4]

27. On June 19, 2019, Honda filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended March 31, 2019 (the "2019 20-F"). The 2019 20-F contained substantively similar descriptions of "Management's Challenges and Preparing for the Future" and the Company's disclosure controls and procedures as discussed, *supra*, in ¶¶ 22-23.

28. On July 4, 2019, American Honda issued a press release containing a summary of the Company's 2019 press meeting "to discuss the future direction of

---

[4] https://hondanews.com/en-US/releases/2019-honda-passport-press-kit

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Honda technology development toward the fulfillment of Honda's 2030 Vision, which defines the future direction of Honda." The press release stated, in relevant part:

### Direction of technology development toward the 2030 Vision

- In order to overcome the rapid changes in today's business environment, we have been pursuing our 2030 Vision – "to serve people worldwide with the joy of expanding their life's potential."

- In pursuit of the 2030 Vision, Honda will innovate technology for both our mobility products and other areas such as energy and robotics. By leveraging these technologies, Honda will create original values unique to Honda.

- Through our motorcycle, automobile, life creation and aviation businesses, Honda comes in contact with 32 million customers a year. By fully leveraging this and also by creating new-value technologies more efficiently through various alliances, Honda will establish an "ecosystem" with energy flowing among electrified mobility products and energy services.

- Honda will create new value for the customer by advancing mobility and people's daily lives through this ecosystem that expands the use of renewable energy.

\*\*\*

### Collision-free technologies

- What Honda is pursuing with its safety technologies is to provide "safety for everyone" and new joys of mobility that stimulate people to enjoy their lives.

- Our primary focus is to enhance the functions of the Honda Sensing suite of safety and driver-assistive technologies. We will further improve the performance of Honda Sensing by

12

continuing to apply new technologies we obtain through our research of automated driving. In addition, for Honda vehicles already in the market without Honda Sensing, we are developing a retrofit kit for the function that will prevent pedal misapplication.

29.     On August 12, 2019, American Honda issued a press release issued a press release entitled "Honda Celebrates 25 Years of Odyssey with 25th Anniversary Accessory Package and 10-Speed Automatic Transmission for All Trims."  The press release touted, in relevant part, that "all 2020 Odyssey minivans now come standard with Idle Stop and Honda's 10-speed automatic, the company's newest and most advanced transmission."

30.     In the brochure for the 2019 Odyssey, American Honda stated that the Odyssey is "[a]t the forefront of safety," "has achieved a top safety pick rating from IIHS.[] Every model comes standard with advanced safety features to assist and help protect you and your most precious cargo," and "offers Honda Sensing,® an available suite of safety and driver-assistive technologies designed to assist and help protect you and your passengers."[5]

31.     On June 19, 2020, Honda filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended March 31, 2020 (the "2020 20-F").  In discussing

---

[5] https://cdn.dealereprocess.org/cdn/brochures/honda/2019-odyssey.pdf

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"Management's Challenges" and "Preparing for the Future," the 2020 20-F stated, in relevant part:

**1. Prepare for future growth**

**Next-generation technologies**

In the automobile industry in the future, the ability to respond to electrification, driver-assistive technologies, connected technologies and other technological innovations will likely determine the competitiveness of a company. Honda will work to develop products and services equipped with such next-generation technologies in the Motorcycle, Automobile and Life creation businesses, and ensure business feasibility as early as possible.

As for electrification, Honda will further expand the lineup of hybrid vehicles based on electric-powered motor technology it has been developing, and proactively introduce zero-emission vehicles.

Regarding driver-assistive technologies, Honda will work to promote and evolve "*Honda SENSING*," a safety and driver-assistive system, for the purpose of preventing accidents.

By continuing to push ahead with efforts for joint development and commercialization in preparation for future society while utilizing partnerships with other companies, Honda will aim to realize a clean and safe / secure society.

32.     Further, with respect to Honda's evaluation of its disclosure controls and procedures, the 2020 20-F contained a substantively identical statement as that referenced, *supra*, in ¶ 23.

33.     In the brochure for the 2020 Acura TLX, American Honda stated that the TLX "delivers a full suite of advanced, active safety and driver-assistance

technologies as standard equipment," and touts that "there is no better amenity than safety."[6]

34.     On June 23, 2021, Honda filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended March 31, 2021 (the "2021 20-F").  In discussing "Management Policies and Strategies," the 2021 20-F stated, in relevant part:

> *Toward the realization of zero traffic collision fatalities*
>
> As part of its responsibility as a mobility company, Honda is researching, developing, and working toward the adoption of safety technology based on its philosophy of "Safety for Everyone", with the aim of realizing a "collision-free mobile society" where everyone who uses roads can live safely. Honda will work toward the goal of zero traffic collision fatalities involving the Group's motorcycles and automobiles globally by 2050. In addition to the collision safety features Honda has long been working on, it is currently working toward the adoption and evolution of its safety and driver-assistive system, "*Honda SENSING*".
>
> In addition to such safety technology, Honda has long been promoting awareness of traffic safety in order to realize a society where all people who use roads, such as drivers and pedestrians, can move safely with safety awareness. Going forward, Honda will carry out this initiative globally.

35.     Further, the 2021 20-F contained substantively similar descriptions of "Management's Challenges," "Preparing for the Future," and the Company's disclosure controls and procedures as discussed, *supra*, in ¶¶ 22-23.

---

[6] https://cdn.dealereprocess.org/cdn/brochures/acura/2020-tlx.pdf

15

36.     On June 22, 2022, Honda filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the Company's fiscal fourth quarter and year ended March 31, 2022 (the "2022 20-F").  The 2022 20-F contained substantively similar descriptions of "Management Policies and Strategies," "Management's Challenges," "Preparing for the Future," and the Company's disclosure controls and procedures as discussed, *supra*, in ¶¶ 22-23.

37.     The statements referenced in ¶¶ 22-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Honda had overstated the safety and effectiveness of the Idle Stop engine feature; (ii) Honda maintained deficient disclosure controls and procedures with respect to product quality and safety; (iii) as a result of the foregoing deficiencies, Honda failed to prevent American Honda from marketing and selling thousands of vehicles that contained a defective Idle Stop feature; (iv) the foregoing conduct subjected the Company and/or its subsidiaries to a heightened risk of litigation, as well as financial and/or reputational harm; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

38.     On September 28, 2022, a putative class action was filed against American Honda alleging that it had sold thousands of vehicles equipped with a flawed Idle Stop feature.  Per the allegations in the class action complaint, after initially shutting off a vehicle's engine, the Idle Stop system in the affected vehicles routinely fails to restart the engine as designed, leaving drivers unable to move their vehicles, and that American Honda was fully aware of the defect before marketing the vehicles.  Specifically, the complaint filed in the lawsuit stated, in relevant part:

> Each Class Vehicle suffers from a safety defect that causes the Idle Stop feature to suddenly, without any warning, fail to restart the engine after the feature automatically turns off the engine at red stoplights and other momentary stops (the "Engine Defect"). Although the Idle Stop feature is designed to restart after the driver releases pressure on the brake pedal, since at least 2015, scores of drivers have reported incidents where their Class Vehicles stalled and left them unable to move at intersections and highway entrances.

> The seriousness of the safety risks created by the undisclosed Engine Defect cannot be overstated. As detailed in the scores of customer complaints detailed [in the complaint], the Defect has left drivers stranded in their stalled vehicles in the middle of oncoming traffic. One driver reported that after the Idle Stop engaged and they removed their foot from the brake the "Honda Pilot stalled in the middle of an intersection, waiting to turn left, of a busy main highway, with my husband and young children inside."[] The driver warned that "this car has placed myself and my family in danger now on multiple occasions." Drivers have also reported that it takes multiple attempts to restart the vehicle after stalling, which can take up to fifteen minutes.

> Honda [America] knew, and/or was on notice of the fact, that its Class Vehicles suffered from the Engine Defect even before commencing sales. Honda is experienced (and touts itself as such) in the design and manufacture of consumer vehicles and conducts extensive pre-sale tests

on all of its components, including the Idle Stop feature, to verify the vehicle is free from defects and complies with its specifications.

Honda also has access to and monitors numerous sources of reports of Class Vehicle failures caused by the Engine Defect, including their own records of customer complaints, dealership repair records, warranty claims, third-party websites, and NHTSA complaints, which it is required under the TREAD Act, Pub. L. No. 106-414, 114 Stat.180 (2000) to monitor in order identify potential defects in their vehicles.

\*\*\*

The prevalence of the Engine Defect in the Class Vehicles further came to light on June 2, 2022, when the National Highway Traffic Safety Administration's ("NHTSA") Office of Defects Investigation ("ODI") disclosed that it is conducting an investigation into Honda's Idle Stop feature and the Engine Defect. [] The investigation was prompted by 221 complaints and several field reports ODI received relating to the Engine Defect in 2016-2019MY Honda Pilot vehicles alone. It was also revealed that after numerous meetings between ODI and Honda, Honda admitted that it has "found a correlation with customers' allegations for the Auto Start/Stop failure to restart the vehicle when the system is activated" in other models equipped with 3.5L engines (i.e., the Class Vehicles).

\*\*\*

If Plaintiffs and/or other Class members knew of the Engine Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them. Plaintiffs and other Class members were denied the benefit of the bargain in connection with their purchases and/or leasing of the Class Vehicles.

The conduct described herein makes Defendant liable for, among other things, breach of express and implied warranties, and unfair, deceptive, and/or fraudulent business practices. In turn, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39.    On this news, Honda's ADS price fell $0.74 per share, or 3.23%, to close at $22.19 per share on September 29, 2022.

40.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Honda ADSs during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Honda ADSs were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Honda or its transfer agent and may be notified of the pendency of

this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Honda;

- whether the Individual Defendants caused Honda to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Honda ADSs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Honda  ADSs are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- Plaintiff and members of the Class purchased, acquired and/or sold Honda ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Honda ADSs; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Honda ADSs at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Honda ADSs. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Honda's finances and business prospects.

54. By virtue of their positions at Honda, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the

materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Honda, the Individual Defendants had knowledge of the details of Honda's internal affairs.

56.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Honda.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Honda's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Honda ADSs was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Honda's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Honda ADSs at artificially inflated prices

24

and relied upon the price of the ADSs, the integrity of the market for the ADSs and/or upon statements disseminated by Defendants, and were damaged thereby.

57.   During the Class Period, Honda ADSs were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Honda ADSs at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said ADSs, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Honda ADSs was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Honda ADSs declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.   By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's ADSs during the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

60.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Honda, and conducted and participated, directly and indirectly, in the conduct of Honda's business affairs.  Because of their senior positions, they knew the adverse non-public information about Honda's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Honda's financial condition and results of operations, and to correct promptly any public statements issued by Honda which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Honda disseminated in the marketplace during the Class Period concerning Honda's results of operations.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Honda to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Honda within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Honda ADSs.

64.    Each of the Individual Defendants, therefore, acted as a controlling person of Honda.  By reason of their senior management positions and/or being directors of Honda, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Honda to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Honda and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Honda.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  February 2, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS