BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Ste. 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

CHRISTOPHER M. CURRAN (*pro hac vice*)
REUBEN J. SEQUEIRA (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile:  (202) 639-9355
ccurran@whitecase.com
rsequeira@whitecase.com

SUSAN L. GRACE (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
susan.grace@whitecase.com

*Attorneys for Defendants*
Honda Motor Co., Ltd. and
American Honda Motor Co., Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RHONDA BAYLOR, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HONDA MOTOR CO., LTD. and AMERICAN HONDA MOTOR CO., INC.,<br><br>*Defendants.* | Case No. 2:23-cv-00794-WLH-AGR<br><br>**DEFENDANTS HONDA MOTOR CO., LTD. AND AMERICAN HONDA MOTOR CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  November 17, 2023<br>Time:  1:00 p.m.<br>Courtroom:  9B<br>Judge:  Hon. Wesley L. Hsu |

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

# **TABLE OF CONTENTS**

**Page**

REPLY MEMORANDUM ..................................................................................1

ARGUMENT.....................................................................................................1

I.     CONTRARY TO THE OPPOSITION, THE FAC DOES NOT SUFFICIENTLY ALLEGE A DOMESTIC TRANSACTION.......................1

II.    CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY ANY ACTIONABLE MISSTATEMENT OR OMISSION ..............................................................2

     A.     Plaintiffs Fail To Allege That Defendants Knew Of The Purported Defect At Any Relevant Time ........................................2

     B.     Plaintiffs Fail To Allege That American Honda's Consumer-Marketing Statements Are Relied On By Investors ...........................5

     C.     Plaintiffs Fail to Allege That Honda Should Be Liable For American Honda's Statements..............................................................7

III.   CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY A STRONG INFERENCE OF SCIENTER .........................................................................................8

IV.    CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY LOSS CAUSATION .......................10

CONCLUSION...............................................................................................13

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ........................................................................... 1

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ........................................................................ 3

*Bien v. LifeLock Inc.*,
No. 14-cv-00416-PHX-SRB, 2015 WL 12819154
(D. Ariz. July 21, 2015) *aff'd sub nom In re Lifelock*, 690 F. App'x 947
(9th Cir. 2015) ("*Lifelock I*") ....................................................................... 6

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................... 10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014) ............................................................ 8

*Carter-Wallace, Inc. v. Hoyt (In re Carter-Wallace, Inc.)*,
150 F.3d 153 (2d Cir. 1998) .......................................................................... 6

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989) ........................................................................ 4

*City of Miami v. Quality Sys. (In re Quality Sys.)*,
865 F.3d 1130 (9th Cir. 2017) ................................................................... 4, 9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d. Cir. 2014) ..................................................................... 1, 2

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................... 10, 11

*Elbit Sys. v. Credit Suisse Group*,
917 F. Supp. 2d 217 (S.D.N.Y. 2013) .......................................................... 8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ......................................................................... 4

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

*In re Apple Inc. Sec. Litig.*,
   No. 19-cv-02033-YGR, 2020 WL 2857397
   (N.D. Cal. June 2, 2020) ................................................................. 4, 7

*In re CytRx Corp. Sec. Litig.*,
   No. 14-cv-1956-GHK-PJWx, 2015 WL 5031232
   (C.D. Cal. July 13, 2015) ...................................................................... 7

*In re Lifelock*,
   690 F. App'x 947 (9th Cir. 2017) ..................................................... 5, 6

*In re Nature's Sunshine Prods. Sec. Litig.*,
   486 F. Supp. 2d 1311 (D. Utah 2007) .................................................. 10

*In re QuantumScape*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ................................................... 7

*In re Rocket Fuel, Inc. Sec. Litig.*,
   No. 14-cv-3998-PJH, 2015 WL 9311921
   (N.D. Cal. Dec. 23, 2015) ...................................................................... 6

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
   No. 18-cv-2445-CCB, 2020 WL 571724
   (D. Md. Feb. 4, 2020) ............................................................................ 7

*In re Toyota Motor Corp. Sec. Litig.*,
   No. 10-cv-922, 2011 WL 2675395
   (C.D. Cal. July 7, 2011) ......................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. 3:15-md-02672-CRB, 2017 WL 66281
   (N.D. Cal. Jan. 4, 2017) ......................................................................... 6

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ............................................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................. 3

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ....................................................... 10, 11

*McGann v. Ernst & Young*,
   102 F.3d 390 (9th Cir. 1996) ................................................................. 5

- iii-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008)........................................................... 12, 13

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018)................................................................ 14

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ............................................................................. 1

*Muzinich & Co. v. Raytheon Co.*,
   No. 01-cv-284-S-BLW, 2002 U.S. Dist. LEXIS 26962
   (D. Id. April 30, 2002) .......................................................................... 7

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v.
   Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003).............................................................. 10

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004)............................................................... 9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013)............................................................. 11

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
   No. 15-cv-8574-PSG-MRWx, 2016 WL 6782768
   (C.D. Cal. Aug. 9, 2016) ...................................................................... 7

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
   780 F. App'x 480 (9th Cir. 2019)......................................................... 5

*Oregon Pub. Emples. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)............................................................... 11

*Sanchez v. Nintendo of Am. Inc.*,
   No. 20-cv-06929, 2022 WL 4099154
   (N.D. Cal. Sept. 7, 2022) .................................................................... 13

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016)................................................................. 3

*Sec. & Exch. Comm'n v. Mack*,
   No. 10-cv-8383-DSF-PJWx,
   2012 WL 13005963
   (C.D. Cal. Aug. 7, 2012) ...................................................................... 6

- iv-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

*Showers v. Pfizer, Inc. (In re Pfizer Inc. Sec. Litig.)*,
    819 F.3d 642 (2d Cir. 2016) ..................................................................... 8

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ................................................................. 1, 2

*Stoyas v. Toshiba Corp.*,
    No. 2:15-cv-04194-DDP-JC, 2022 WL 220920
    (C.D. Cal. Jan. 25, 2022) .......................................................................... 2

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................... 8

*United States v. Martoma*,
    No. 12-cr-973-PGG, 2013 WL 6632676
    (S.D.N.Y. Dec. 17, 2013) ......................................................................... 2

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ...................................................................... 4

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
    No. 2:21-cv-09914-CAS-JCx, 2022 WL 13800633
    (C.D. Cal. Oct. 20, 2022) .......................................................................... 9

## RULES

FED. R. CIV. P. 8 ................................................................................................ 11

FED. R. CIV. P. 9(b) ...................................................................................... 2, 11

## STATUTES AND REGULATIONS

17 C.F.R. § 240.10b-5(b) .................................................................................. 7

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78j(b) ................................................................................. 1, 2

- v-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

**REPLY MEMORANDUM**

Plaintiffs' Opposition consistently misreads the controlling case law.  Under a fair and faithful application of that case law, the FAC is deficient in a number of independent respects, including a failure to plead (i) a domestic transaction, (ii) an actionable misrepresentation or omission (as opposed to mere puffery or consumer marketing), (iii) scienter, and (iv) loss causation.  All told, the FAC does not come close to satisfying the heightened pleading requirements of the PSLRA and Rule 9(b).

**ARGUMENT**

**I.     CONTRARY TO THE OPPOSITION, THE FAC DOES NOT SUFFICIENTLY ALLEGE A DOMESTIC TRANSACTION**

Plaintiffs are incorrect (Opp'n 6) that *Morrison*'s domesticity requirement is satisfied merely because Honda ADSs trade on the NYSE; even securities listed on a domestic exchange may be acquired off-exchange and outside the United States.  *See City of Pontiac*, 752 F.3d at 179-80 (rejecting plaintiffs' "listing theory" as "irreconcilable with *Morrison*" because *Morrison*'s domesticity test focuses on "the location of the securities *transaction* and not the location of an exchange"); *Stoyas*, 896 F.3d at 945 (describing *Morrison*'s "entire focus" on Exchange Act's inapplicability outside the United States and "announcement of the 'transactional test'" for domesticity (quoting *Morrison*, 561 U.S. at 255, 269)).

Plaintiffs are also mistaken (Opp'n 7) that a purchaser's "U.S. residency" makes a transaction domestic under *Morrison*.  *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) ("A purchaser's citizenship or residency does not affect where a transaction occurs; a foreign resident can make a purchase within the United States, and a United States resident can make a purchase outside the United States."); *Stoyas*, 896 F.3d at 949 (adopting *Absolute Activist*); *City of Pontiac*, 752 F.3d at 181-82 (following *Absolute Activist* and affirming dismissal of U.S. plaintiff whose purchase of NYSE-listed securities was executed on a foreign exchange).

- 1 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply in Support of their Motion To Dismiss The Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Plaintiffs misplace reliance on *Martoma* (Opp'n 6-7), an out-of-circuit district-court criminal decision predating both *Stoyas* and *City of Pontiac*. In any event, in *Martoma* the "ADRs in question were bought and sold on the NYSE . . . within the United States." 2013 WL 6632676, at *3, 5 & n.4. Plaintiffs here have not alleged such facts.

Indeed, the FAC and Plaintiffs' Opposition conspicuously leave open the possibility that Plaintiffs acquired their ADSs through a transaction outside the United States. *See* Mot. 5-6. Precisely for this reason, in *Stoyas*, where the plaintiff was also a U.S. person, the Ninth Circuit required "specific factual allegations regarding where the parties to the transaction incurred irrevocable liability." *Stoyas*, 896 F.3d at 949. On remand in *Stoyas*, this Court found that the U.S. plaintiff incurred irrevocable liability to purchase its ADSs *outside* the United States. *See Stoyas v. Toshiba Corp.*, No. 2:15-cv-04194, 2022 WL 220920, at *5 (C.D. Cal. Jan. 25, 2022). Absent specific allegations of a domestic transaction, the FAC fails to plead applicability of Section 10(b) of the Exchange Act.

## II.   CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY ANY ACTIONABLE MISSTATEMENT OR OMISSION

### A.   Plaintiffs Fail To Allege That Defendants Knew Of The Purported Defect At Any Relevant Time

Plaintiffs blatantly ignore the heightened pleading standard under Rule 9(b) and the PSLRA, invoking instead the lesser *Twombly* standard. *See* Opp'n 6. Plaintiffs fail to rebut that the FAC falls short of alleging particularized facts explaining why each challenged statement is misleading. *See* Mot. 4-5.

The documents Plaintiffs cite to show Defendants' purported knowledge of an Idle Stop "Defect" concern issues unrelated to the engine-restart issue. *See* Mot. 10-11; Opp'n 1 (defining relevant "Defect" as "failure to restart the engine after a stop"); *see id.* 18 (same); *compare* Opp'n 8 (citing FAC ¶¶77-84, 137 as evidence of "the

- 2-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Defect"), *with* Mot. Exs. 20-26, 53 (cited at FAC ¶¶77-84, 137) (service bulletins addressing Idle Stop issues other than engine restart).    Likewise, documents purportedly "admit[ting]" that "during development, the idle stop enable criteria was mis-set" are from March 2022 and January 2023 — long after the challenged statements — and do not suggest that the "mis-set[ting]" was actually discovered in 2015 as Plaintiffs assert.  Opp'n 8 (quoting documents cited at FAC ¶¶93 n.23 & 102 n.34-36 (Mot. Exs. 36-37 & 45-49), issued on March 30, 2022 and January 6, 2023); Mot. 10.

Plaintiffs' inapposite cases (Opp'n 9) involve alleged omissions that, unlike here, were pleaded with particularity.  For example, in *Berson*, former employees "would testify to the existence and effect" of concealed stop-work orders on contracts worth tens-of-millions of dollars.  527 F.3d at 984-85.  *See also Schueneman*, 840 F.3d at 701-702 (top executives "sat down with the FDA to discuss" carcinogenic effects of drug product); *Lifelock II*, 780 Fed. App'x at 484-85 (defendant "admitted that she was working to fix the stale alert problem"); *Khoja*, 899 F.3d at 1010 (later-study results contradicted earlier-publicized results for "potential miracle drug").

Putting aside whether the challenged statements (mostly mere puffery) could ever be "material" *to investors* as Plaintiffs argue (Opp'n 9-10), Plaintiffs fail to allege with particularity that the purported omission of the engine-restart issue was sufficiently material to Honda vehicles' overall "safety and functionality" (Opp'n 10) to render any of Defendants' statements false or misleading.  *See* Mot. 11-12 (arguing "Defect" must have allegedly been "of sufficient magnitude to have a material impact on" Defendants' performance).  And where Defendants' financial or operational performance (including overall safety) is not alleged to have been materially jeopardized by the engine-restart issue, it follows that the purported failure to disclose the issue could not have "significantly altered the 'total mix' of information" that investors would have considered "important" in deciding to buy Honda ADSs. Mot. 11 (quoting *Amgen Inc.*, 568 U.S. at 480 n.5).

- 3-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Plaintiffs additionally fail to rebut that the challenged statements are inactionable puffery, generally "touting" (Opp'n 1, 8; *see id.* 9-11) Defendants' products. *See* Mot. 8-9. Defendants' purported "knowledge of the Defect spanning numerous models/years" (Opp'n 11) cannot make the statements untrue absent allegations that Defendants had such knowledge — or that an engine-restart issue existed — when the statements were made.

Plaintiffs fail to identify any purported "context" (Opp'n 10-11) that changes this analysis. The extremely general challenged statements concern Honda's overall commitment to safety (*see* Mot. 13; Ex. B), and Plaintiffs have not alleged a single accident or injury caused by the Idle Stop. In contrast, Plaintiffs' cases (Opp'n 10-11) concern specific misrepresentations directly undermined by concrete facts. *See Casella*, 883 F.2d at 808 (statement that investment was a "sure thing," "served to emphasize, specific misrepresentations of fact" about profitability and tax benefits); *Warshaw*, 74 F.3d at 959 (statement that "everything was going fine" made "in response to market fears about FDA approval" of drug defendants knew "would never be approved by the FDA"); *Glazer*, 63 F.4th at 771 (statements that sales were "tracking very well" and company had "very large pipeline" made mostly "in response to specific questions asked by financial analysts" about disappointing financials); *Apple*, 2020 WL 2857397, at *14-15 (statements that iPhone sales "got off to a really great start" made "mere days before Apple cut production lines"); *Quality Sys.*, 865 F.3d at 1144 (statement that company's pipeline "was unchanged, or even growing," when the company knew it was not). Likewise, that opinion statements *could* be rendered misleading (Opp'n 11) is irrelevant absent FAC allegations of knowledge of, or even appearance of, the engine-restart issue at the time of the statements. Plaintiffs also do not refute authorities that generalized safety statements, like those here, are inactionable puffery notwithstanding some safety issues. *See* Mot. 13.

Plaintiffs also do not rebut that the challenged statements about particular

- 4-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

safety features do not reference Idle Stop. Mot. 14. Likewise, Plaintiffs do not dispute that Honda's vehicles in fact achieved "top safety ratings." Mot. 14. Plaintiffs also ignore that the allegedly misleading statements concerning the Idle Stop's features (FAC ¶¶113, 119, 121, 125) appear in vehicle-release brochures from long before any purported defect allegedly materialized in those models. *See* Mot. 15-16.

**B.    Plaintiffs Fail To Allege That American Honda's Consumer-Marketing Statements Are Relied On By Investors**

Plaintiffs have no response to the Ninth Circuit's holding in *Lifelock*, 690 F. App'x at 954 ("*Lifelock I*"), that advertisements like those challenged here are not actionable under U.S. securities laws. Mot. 7-8. Rather than take on the Ninth Circuit's analysis in *Lifelock I* (and the District of Arizona's underlying analysis in *Bien v. Lifelock*), in a blatant misdirection Plaintiffs point to a separate action against Lifelock, Inc. *See* Opp'n 13-14 (citing *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483 (9th Cir. 2019) ("*Lifelock II*")). In *Lifelock II*, the Ninth Circuit sustained claims based on alleged statements about Lifelock's identify-theft alerts where the statements were made, among other places, in the company's quarterly earnings report and during an investor conference. *See Lifelock II*, 780 Fed. App'x at 483 n.2. *Lifelock II* does not undermine *Lifelock I*, because *Lifelock II* does not address statements made in advertisements or the "in connection with" requirement. *See id.*

Contrary to Plaintiffs' straw-man assertions (Opp'n 12, 14), Defendants did not argue that Section 10(b) claims are limited to SEC filings, or that the statement medium is dispositive. Rather, Defendants rely on the well-established element of the "in connection with" requirement that actionable misstatements are only those "'reasonably calculated to influence those who trade securities.'" Mot. 7 (quoting *McGann*, 102 F.3d at 394). That requirement is not satisfied where, as here, the statements appear in consumer advertisements having "little in common with . . .

- 5-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

the types of communications typically relied upon by investors." *Bien*, 2015 WL 12819154, at *9.

Plaintiffs do not distinguish American Honda's advertisements from those in *Lifelock I* that the Ninth Court held were "not probative of securities fraud." 690 F. App'x at 953; *compare id.* 953-54 (holding "descriptive chart" of Lifelock's "Types of Protection" and "descri[ption of] Lifelock's membership benefits" lacked "any potential to influence investors"), *with, e.g.*, FAC ¶¶114, 118, 122, 126, 128 (press releases and brochures with "description[s] of the Idle Stop system" and/or "specific features").

Plaintiffs' conclusory assertion that investors "had every right" to rely on American Honda's consumer advertisements (Opp'n 12) lacks any authority that those materials are "reasonably used by market professionals to evaluate [Honda's] stock." *Bien*, 2015 WL 12819154, at *9. *Carter-Wallace* (Opp'n 12) concerned "[t]echnical advertisements in sophisticated medical journals detailing the attributes of a new drug" with an "obvious bearing on the [drug company's] financial future." 150 F.3d at 156. The Ninth Circuit distinguished such detailed medical-journal write-ups from consumer-facing advertisements like at issue in *Lifelock I* (and here). *See Lifelock I*, 690 F. App'x at 954. Likewise, the pre-*Lifelock I* case *Volkswagen* does not concern consumer advertisements but statements regarding "compliance with emissions regulations as well as the company's overall financial condition." 2017 WL 66281, at *1, *18 (addressing "fraud-on-the-market" reliance theory, not "in connection with" requirement). In *Rocket Fuel*, the only actionable statements ensured "a specific level of effectiveness." 2015 WL 9311921, at *5-6. Plaintiffs do not allege that Defendants' consumer advertisements made "effectiveness" guarantees.

Plaintiffs' remaining cases (Opp'n 12-13) are similarly off-point, involving statements aimed toward investors. *See Mack*, 2012 WL 13005963, at *2 (investment firm's statements about "investment returns and claim[ing] specific percentages of

- 6-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

returns"); *Muzinich*, 2002 U.S. Dist. LEXIS 26962, at *3-9 (misstated financials in 10-K); *Sinclair Broad. Grp.*, 2020 WL 571724, at *5 & n.8 ("submissions to the FCC" partly "motivated … by public opposition to the Merger"); *QuantumScape*, 580 F. Supp. 3d at 723, 726, 739-40 (e.g., LinkedIn posts by co-founder/CTO about why company "went public," SEC filings, CEO's CNBC interviews); *CytRx Corp.*, 2015 WL 5031232, at *5 ("press releases, filings, or communications with investors"); *Apple*, 2020 WL 2857397, at *3, 11-12 (e.g., "earnings call[s]" and SEC filings).

### C.   Plaintiffs Fail to Allege That Honda Should Be Liable For American Honda's Statements

Although Plaintiffs assert that Honda's purported "ultimate authority" over American Honda's statements makes Honda "liable" for the statements, the FAC fails to plead facts supporting that theory. *See* Opp'n 15.

The statement "maker" for purposes of Rule 10b-5 liability must have "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. That Honda apex executives simultaneously served as American Honda apex executives (FAC ¶¶25-27) does not show Honda's authority over American Honda statements. *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. 15-cv-857-PSG-MRWx, 2016 WL 6782768, at *11 (C.D. Cal. Aug. 9, 2016) (dismissing "conclusory" allegations of authority over subsidiary's statements based on overlapping executives, because "courts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary'" (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998))). Indeed, Honda's corporate separateness would be respected even if overlapping Honda/American Honda executives had allegedly "participated in the drafting or preparation of" misstatements. *Oaktree*, 2016 WL 6782768, at *10.

Nor is "ultimate authority" established by Honda's "100% ownership and

- 7-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

voting interest in American Honda" (FAC ¶¶29-30). *See Elbit Sys.*, 917 F. Supp. 2d at 226 (cited at Opp'n 15) (acknowledging "a parent-subsidiary relationship does not by itself create a presumption of agency"). Or by allegations that Honda "established the Acura Brand" and U.S. "sales network" (FAC ¶29). *See Elbit Sys.*, 917 F. Supp. 2d at 226 (holding "shared brand identity" insufficient to find subsidiary spoke as parent's agent).

Unlike Plaintiffs' examples of "ultimate authority" (Opp'n 15), the FAC fails to allege: that Honda "reviewed and finalized" the statements or had "final sign-off" (*Pfizer*, 819 F.3d at 657); that American Honda "received an instruction" from Honda's CEO to make the statements (*Carpenters Pension Tr. Fund*, 56 F. Supp. 3d at 556, 559); or that Honda "interven[ed]" and "direct[ed]" the statements (*Elbit Sys.*, 917 F. Supp. 2d at 226).

## III.   CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY A STRONG INFERENCE OF SCIENTER

Plaintiffs anchor their scienter allegation primarily on American Honda TSBs (technical service bulletins) purportedly acknowledging the alleged defect as of July 25, 2015. *See* Opp'n 16 (citing FAC ¶¶77-103). Yet Plaintiffs fail to rebut that no service bulletin concerns the alleged engine-restart "Defect" until July 30, 2019. *See* Mot. 11. As noted, the service bulletins where American Honda purportedly "admitted" that the "'idle stop enable criteria was mis-set' in 2015" do not indicate discovery of the "mis-set[ting]" before issuance of the March 2022 and January 2023 service bulletins. Opp'n 16 (citing FAC ¶93 (quoting Mar. 30, 2022 TSB (Mot. Ex. 37)) and ¶102 (quoting Jan. 6, 2023 TSB (Mot. Ex. 45))).

Similarly, Plaintiffs identify no American Honda "quarterly reports to NHTSA" acknowledging an engine-restart issue. *See* Opp'n 17. Plaintiffs have no basis for their vague and speculative leap that American Honda's reports "confirm" that "the Defect was discussed at regularly held meetings attended by [unidentified] corporate management." *Id.* NHTSA's June 3, 2022 announcement — well *after*

- 8-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

the alleged misstatements — also cannot show scienter of "corporate management" (Opp'n 17) at any relevant time. *See* Mot. 18.

Plaintiffs' authorities contradict the suggestion (Opp'n 17) that scienter can be pleaded with particularity merely by alleging that unidentified "corporate management" had "access" to reports purportedly discussing the "Defect." *See Quality Sys.*, 865 F.3d at 1145 (finding scienter based on confidential witnesses' "personal knowledge" that reports showing undisclosed truth were "delivered to the CFO Holt's office," and an executive acknowledged that truth on a call) (alteration omitted); *Nursing Home Pension Fund*, 380 F.3d at 1231 (finding scienter where top executives "admit to having monitored the database" showing true sales figures). Plaintiffs' reliance on *Toyota* (Opp'n 17-18) ignores the "smoking gun" email "that Toyota had been covering up the true nature and severity of the unintended acceleration defects." *In re Toyota Motor Corp. Sec. Litig.*, No. 10-cv-922, 2011 WL 2675395, at *3 (C.D. Cal. July 7, 2011). The FAC contains no similar allegation.

Plaintiffs' other scienter arguments — based on the importance of Honda's vehicle business (Opp'n 16, 18), "dramatic[] fals[ity]" of the alleged misstatements (*id.* 18), and "critical" nature of "safety, reliability, and functionality" to Defendants' "operations" (*id.*) — all assume the engine-restart "Defect" significantly affected Defendants' overall business. Yet the NHTSA-reported complaints amounted to just 0.1% of the 2016-2020MY Pilot population. FAC ¶96. And Plaintiffs' argument that "vehicle production and sale are Honda's sole business" (Opp'n 16) contradicts Plaintiffs' allegation that "Honda is a multinational conglomerate manufacturer of automobiles, motorcycles and power equipment" (FAC ¶2).

Plaintiffs' authorities finding scienter (Opp'n 17-18) involve alleged fraud plainly more significant to the defendants' business. In *Zhou*, a startup e-car manufacturer with no sales misleadingly reported 14,000 vehicle backorders. 2022 WL 13800633, at *7. In *America West*, top executives and board members sold stock in transactions "dramatically out of line with their prior trading practices" while

-9-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

regulators threatened the airline with penalties. 320 F.3d at 938-39, 943 & n.21. In *Brown*, an energy company "maintained two sets of financial statements": "a presumably accurate set" for its Chinese regulator, and a "false and misleading" set for the SEC. 875 F. Supp. 2d at 1101.

Finally, far from a "cover-up" (Opp'n 16 & n.5), American Honda reasonably directed service bulletins to dealers, who could implement those technical instructions, particularly because the communications addressed an issue that American Honda had yet "[t]o fully understand." *E.g.*, Mot. Ex. 23 (March 10, 2017 TSB (cited at FAC ¶81)); *see also, e.g.*, Mot. Ex. 34 (February 13, 2020 TSB (cited at FAC ¶92)) (providing instructions to dealerships "[t]o better understand the cause" of customer complaints).

The "cover-up" in *Nature's Sunshine Products* (Opp'n 16 n.5) was evidenced by statements of the defendant's auditor "disput[ing]" the defendant's statements and "protesting the measures taken by [the defendant] to remedy" the statements' effects. 486 F. Supp. 2d at 1311. Unlike the auditors in *Nature's Sunshine Products*, NHTSA here announced its "Preliminary Evaluation" on June 3, 2022 not to call out a cover-up but, in consultation with American Honda, to "determine the scope and severity of the potential problem." Mot. 2 (quoting NHTSA, ODI Resume (Ex. 39)). In fact, the FAC does not allege any NHTSA finding of a reportable defect, let alone any injuries or need for a recall that Defendants purportedly covered up. *See* Mot. 12.

## IV. CONTRARY TO THE OPPOSITION, THE FAC DOES NOT ALLEGE WITH PARTICULARITY LOSS CAUSATION

Plaintiffs do not dispute their burden to plead loss causation by alleging that corrective disclosures (a) "revealed the truth" about Defendants' alleged fraud, and (b) "'caused the [Honda ADS] price to drop.'" *Lloyd*, 811 F.3d at 1209 (cited at Opp'n 19); *see* Mot. 19. Plaintiffs, however, misstate the pleading standard as requiring merely "some indication of . . . the causal connection that the plaintiff has in mind." Opp'n 19 (quoting *Dura*, 544 U.S. at 347 ("assum[ing], at least for

- 10-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

argument's sake" applicability of Rule 8(a)(2))).  But the Ninth Circuit has made clear that Rule 9(b)'s heightened pleading standard "applies to all elements of a securities fraud action, including loss causation." *Apollo Grp.*, 774 F.3d at 605 (addressing *Dura*); *see Lloyd*, 811 F.3d at 1205 (citing *Apollo* for pleading standard).

Plaintiffs have not rebutted that the FAC (¶¶144-47) fails to allege with particularity that the two purported disclosures "revealed" fraud by the Defendants. NHTSA's June 3, 2022 "Preliminary Evaluation" announcement could not have revealed the alleged engine-restart "Defect" or Defendants' "knowledge of it" (Opp'n 21 n.6) where, months *before*, American Honda itself announced a "campaign" to notify vehicle owners of a warranty extension precisely to cover the engine-restart issue.  *See* FAC ¶93 (citing Mar. 30, 2022 warranty-extension notice regarding engine-restart issue (Mot. Ex. 36)).  For the same reason, "[n]ews of the [NHTSA] investigation itself" (Opp'n 20) "does not qualify as a corrective disclosure" and "cannot meet the loss causation requirement." *Lloyd*, 811 F.3d at 1210 (holding investigation announcement supports loss causation only if followed by "a subsequent corrective disclosure by the defendant").  The FAC never alleges that "the investigation itself" or American Honda "field reports" (Opp'n 20-21) were concealed by fraud.  *See* Mot. 12-13 (no affirmative duty to disclose all material information, including on safety).

Because the FAC does not allege that the purportedly "concealed" engine-restart "Defect" *itself* caused Plaintiffs' loss in share value, Plaintiffs' materialization-of-concealed-risks theory (Opp'n 2, 19) also fails. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (explaining under materialization-of-risks theory "plaintiff must show that 'it was the very facts about which the defendant lied which caused its injuries'").

Plaintiffs do not dispute that the *Cooper* product-liability allegations replicate the prior (tellingly ignored) *Bolooki* complaint.  Mot. 20.  Any risks purportedly

- 11-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

"revealed in stark detail" by *Cooper* (Opp'n 20) "materialized" with the *Bolooki* filing three months earlier. Unlike here, the *Robb* defendant did *not* dispute that the consumer complaint "revealed the potential that a misstatement existed." 216 F. Supp. 3d at 1033. *Cooper*, however, alleges that the engine-restart issue and Defendants' purported knowledge of it were "publicly available information." *See, e.g.*, Mot. Ex. 55 (*Cooper* Complaint) ¶122; Mot. 20.

Plaintiffs fail to rebut the import of the Honda ADS's quick price recovery. Mot. 20. The FAC measures the price drop after *Cooper*'s filing from the trading-day close until the next trading-day close. *See* FAC ¶¶131-32. If measured the same way, the Honda-ADS price *rose* after NHTSA's June 3, 2022 announcement. *See* Mot. Ex. D at 1.

Furthermore, Plaintiffs do not contest that the Court cannot infer from the FAC whether the market reaction to NHTSA's announcement was negative, neutral, or positive. *See* Mot. 21 (citing Ex. D). Plaintiffs' non-responsive answer (Opp'n 21), without authority, that the relevant Honda-ADS price drop should be measured nearly *four months later* on September 29, 2022, epitomizes the FAC's lack of particularity.

Regarding the stock price drop after *Cooper*, Plaintiffs do not attempt to dispute that, by economic logic, Honda's $0.44 dividend on September 28, 2022 depressed the Honda-ADS price on September 29, 2022. Defendants do not argue (Opp'n 22) that Plaintiffs must "rule out all other possible causes" of the price drop. But while Plaintiffs assert that, in response to the NHTSA announcement and *Cooper* complaint, "the market reassessed the regulatory exposure and litigation risk" of the alleged "Defect" (Opp'n 19) and suddenly understood "how expansive the Defect was and the safety risks it posed" (Opp'n 21 n.6), this "is not a 'fact.' It is an inference that [Plaintiffs] believe[] is warranted." *Metzler*, 540 F.3d at 1065. The Court "is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Id.* 1064-65; *see also First Solar*, 881 F.3d at 754 (cited at

- 12-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Opp'n 19) ("When plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory." (citing *Metzler*)).

Plaintiffs cannot distinguish *Metzler* on the ground that the alleged fraud there occurred in "an extremely small percentage" — approximately 1.1% — "of the Defendants' overall operations." Opp'n 22 (citing *Metzler*, 540 F.3d at 1064). Here, the engine-restart "Defect" allegedly was a far smaller part of Defendants' operations. *See* FAC ¶¶2, 96 (alleging NHTSA-compiled complaints regarding approximately *0.1%* of one Idle Stop-equipped model, and "automobiles" just one of three business lines within Honda "conglomerate"). Disclosure of such an isolated issue is no basis to infer "company-wide" issues with safety that could have plausibly devalued Honda as a whole. *Metzler*, 540 F.3d at 1064-65.

\* \* \*

Plaintiffs' footnote request (Opp'n 22 n.7) for leave to amend should be denied. Under any iteration, Plaintiffs' suit remains essentially a product-liability action grounded on openly publicized customer complaints and generalized vehicle-marketing statements — not misstatements or omissions related to securities. The FAC, therefore, "could not be saved by amendment," (*Eminence Cap.*, 316 F.3d at 1052 (Opp'n 22)), and Plaintiffs' perfunctory footnote request provides "neither argument nor proposed amendment" to conclude otherwise (*Sanchez v. Nintendo of Am. Inc.*, No. 20-cv-06929, 2022 WL 4099154, at \*3 (N.D. Cal. Sept. 7, 2022)).

## CONCLUSION

For the foregoing reasons and those stated with Defendants' Motion,

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Defendants respectfully request that the Court dismiss the claims against Defendants in their entirety with prejudice.

Respectfully submitted,

Dated:        October 23, 2023                    WHITE & CASE LLP

                                                  By: */s/ Bryan A. Merryman*
                                                      Bryan A. Merryman

                                                  *Attorneys for Defendants*
                                                  Honda Motor Co., Ltd. and
                                                  American Honda Motor Co., Inc.

- 14-

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR