BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Ste. 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

CHRISTOPHER M. CURRAN (*pro hac vice*)
REUBEN J. SEQUEIRA (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355
ccurran@whitecase.com
rsequeira@whitecase.com

SUSAN L. GRACE (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
susan.grace@whitecase.com

*Attorneys for Defendants*
Honda Motor Co., Ltd. and
American Honda Motor Co., Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RHONDA BAYLOR, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HONDA MOTOR CO., LTD. and AMERICAN HONDA MOTOR CO., INC.,<br><br>*Defendants*. | Case No. 2:23-cv-00794-WLH-AGR<br><br>**DEFENDANTS HONDA MOTOR CO., LTD. AND AMERICAN HONDA MOTOR CO., INC.'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Date:  January 19, 2024<br>Time:  1:30 p.m.<br>Courtroom:  9B<br>Judge:  Hon. Wesley L. Hsu |

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Response to Plaintiffs' Notice of Supplemental Authority;
2:23-cv-00794-WLH-AGR

Contrary to Plaintiffs' "Notice of Supplemental Authority" (ECF No. 74), the Ninth Circuit's *Facebook* decision does not support Plaintiffs' arguments and instead confirms that Plaintiffs' amended complaint should be dismissed. *See In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844 (9th Cir. 2023), *petition for panel rehearing and petition for rehearing en banc filed*, No. 22-15077 (9th Cir. Nov. 1, 2023), ECF No. 50-1.

To begin with, the Ninth Circuit affirmed dismissal as to the very type of statements Plaintiffs challenge here regarding Honda's "focus[] on" and generalized commitment to safety. *Facebook*, 84 F.4th at 864 (affirming dismissal as to statements regarding Facebook's "commitment to transparency and [data] control"). Facebook's statements were "not false when they were made" because they "merely reiterated Facebook's ongoing commitment to 'transparency and control' rather than assuring users they controlled their Facebook data." *Id.* In the same way, Defendants' challenged statements about safety did not falsely "assur[e]" against possible defects, and do not even concern the Idle Stop feature specifically. *See* Mot. 8-9 (ECF No. 65).

The Ninth Circuit also affirmed dismissal for lack of scienter as to Facebook's representations about an internal investigation, even where the company's executive "'*should have*' discovered misconduct." *Facebook*, 84 F.4th at 862 (emphasis in original) (affirming dismissal regarding Facebook statement that investigation of Cambridge Analytica had not uncovered wrongdoing). *Facebook* thus also confirms that American Honda's internal service bulletins directing dealers to look into the Idle Stop "[t]o better understand the cause" of customer complaints, as well as NHTSA's announcement of a "Preliminary Evaluation," could not support an inference of scienter. Reply Br. 9 (ECF No. 71); *see* Opp'n 17 (ECF No. 69).

Furthermore, putting aside that the *Facebook* panel overlooked controlling Ninth Circuit law applying the heightened pleading standard to loss causation, *see Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014)

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Response to Plaintiffs' Notice of Supplemental Authority;
2:23-cv-00794-WLH-AGR

("We . . . hold today that Rule 9(b) applies to all elements of a securities fraud action, including loss causation."); *United States v. Shelby*, 939 F.3d 975, 978 (9th Cir. 2019) ("A three-judge panel can only decline to apply prior Circuit precedent 'clearly irreconcilable' with a subsequent Supreme Court decision."), the two statements Plaintiffs point to that *Facebook* held could support a claim merely confirm, by contrast with the allegations here, that Plaintiffs have failed to plead loss causation.

Unlike Facebook's March 2018 revelation that it was suspending Cambridge Analytica for improperly sharing unconsenting users' data (Notice 2), here, the substance of the *Cooper* allegations against Defendants had already been revealed by the *Bolooki* complaint (which Plaintiffs continue to ignore). *See* Mot. 20; Reply 11-12. Plaintiffs recognize that Facebook's March 2018 announcement was deemed a corrective disclosure specifically because prior "articles about Cambridge Analytica did not provide investors the necessary information to learn that Facebook users did not control their data." Notice 2 (quoting *Facebook*, 84 F.4th at 865). Unlike the previous reporting in *Facebook*, the previous *Bolooki* complaint (Mot. Exhibit 54, ECF No. 65-61) *did provide* investors with the purportedly "necessary information" Plaintiffs identify (Notice 2) — i.e., that numerous Honda models allegedly suffered "a defective Idle Stop feature" (*see, e.g.*, *Bolooki* ¶¶1-2, 34); that this "placed drivers and others in potentially hazardous situations" (*see, e.g.*, *Bolooki* ¶¶35-36); and that Honda purportedly "knew about the defect as far back as 2015" (*see, e.g.*, *Bolooki* p. 81 ¶215). Plaintiffs acknowledge that *Cooper* merely "expanded upon" alleged risks and "provided a more comprehensive list" of models with the alleged defect. Notice 3.

Furthermore, unlike Facebook's July 2018 earnings call, *Cooper* did not "reveal[] new information to the market" about the impact of the alleged misstatements. *Facebook*, 84 F.4th at 866; *see* Notice 2. Although the earnings call came two months after the revelation that Facebook's whitelist policy allowed third-party access to unconsenting users' data, the July 2018 call revealed "new

- 2 -

Honda Motor Co., Ltd. and American Honda Motor Co. Inc.'s
Response to Plaintiffs' Notice of Supplemental Authority;
2:23-cv-00794-WLH-AGR

information" about Facebook's operational and financial underperformance that was allegedly "*on account of* the Cambridge Analytica and whitelisting scandals." *Facebook*, 84 F.4th at 866 (emphasis added) (recounting Facebook's announcement of "dramatically lowered user engagement, substantially decreased advertising revenue and earnings, and reduced growth expectations going forward," and that "investors and market analysts explicitly connected the revenue drop to the scandals"); *see id.* (explaining that in *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057-58 (9th Cir. 2008), "it was reasonable for the public to fail to appreciate the significance of the warning letters until learning of Gilead's disappointing revenue posting").   Here, even the *Cooper* complaint's alleged elaboration of recycled allegations from *Bolooki* did not reveal any impact on Honda's operational or financial performance so as to allow the market "to appreciate [the] significance" to Honda's stock price of Defendants' purported concealment of the alleged Idle Stop defect.  *Id.* at 866 (alteration in original).

Finally, *Facebook*'s outcome on falsity also undermines Plaintiffs' allegations. Unlike Facebook's 10-K risk disclosure that presented misuse of user data as "merely conjectural," Defendants' challenged statements here did not "create an impression of a state of affairs that differs *in a material way* from the one that actually exists." *Facebook*, 84 F.4th at 858-59 (emphasis added); *see* Notice 3.  The Ninth Circuit determined that Facebook's representation that the risk of user-data misuse was "purely hypothetical" was "directly contradicted" by Facebook's knowledge that Cambridge Analytica "had violated Facebook's user data policies," "lied . . . about deleting" derivative data, and then "refused to certify that the data had actually been deleted." *Id.* at 859-60 ("Facebook presented the prospect of a [data] breach as purely hypothetical when it had *already occurred*.") (emphasis added).  Here, Plaintiffs fail to plead with particularity facts showing that the alleged engine-restart defect in the Idle Stop had "already occurred" at the time of, and thus "directly contradicted," any of Defendants' challenged statements.  *Id.* at 860; *see* Mot. 10; Reply 2-5.   In

- 3 -

Honda Motor Co., Ltd. and American Honda Motor Co. Inc.'s
Response to Plaintiffs' Notice of Supplemental Authority;
2:23-cv-00794-WLH-AGR

addition, regardless of when any such engine-restart issues "materialized" (Notice 3), Plaintiffs fail to allege that the issues were so significant that any of Defendants' challenged statements about safety or functionality presented a "state of affairs" different from reality "in a material way." *Facebook*, 84 F.4th at 858; *compare id.* at 853-55 (recounting that Cambridge Analytica's consultant "harvested data from over thirty million users," reportedly "one of the largest data leaks in the social network's history"), *with* FAC ¶96 (alleging NHTSA-reported complaints regarding less than 0.2 million of 2016-2020MY Honda Pilot vehicles); *see* Mot. 11-12; Reply 3.

Respectfully submitted,

Dated: November 10, 2023          WHITE & CASE LLP

                                  By: */s/ Bryan A. Merryman*
                                      Bryan A. Merryman

                                  *Attorneys for Defendants*
                                  Honda Motor Co., Ltd. and
                                  American Honda Motor Co., Inc.

- 4 -

Honda Motor Co., Ltd. and American Honda Motor Co. Inc.'s
Response to Plaintiffs' Notice of Supplemental Authority;
2:23-cv-00794-WLH-AGR