BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Ste. 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

CHRISTOPHER M. CURRAN (*pro hac vice*)
REUBEN J. SEQUEIRA (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355
ccurran@whitecase.com
rsequeira@whitecase.com

SUSAN L. GRACE (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
susan.grace@whitecase.com

*Attorneys for Defendants*
Honda Motor Co., Ltd. and
American Honda Motor Co., Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| RHONDA BAYLOR, Individually and On Behalf of All Others Similarly Situated, <br><br> *Plaintiff,* <br><br> v. <br><br> HONDA MOTOR CO., LTD. and AMERICAN HONDA MOTOR CO., INC., <br><br> *Defendants*. | Case No. 2:23-cv-00794-WLH-AGR <br><br> **DEFENDANTS HONDA MOTOR CO., LTD. AND AMERICAN HONDA MOTOR CO., INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Date: May 17, 2024 <br> Time: 1:30 p.m. <br> Courtroom: 9B <br> Judge: Hon. Wesley L. Hsu |

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ................................................................................................................... 1

I.    CONTRARY TO THE OPPOSITION, THE SAC DOES NOT CURE PLAINTIFFS' FAILURE TO ADEQUATELY ALLEGE A DOMESTIC TRANSACTION .................................................................................. 1

II.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT CURE PLAINTIFFS' FAILURE TO ADEQUATELY ALLEGE THAT ANY STATEMENT WAS FALSE OR MISLEADING .............................. 2

III.  CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THAT THE CONSUMER-MARKETING STATEMENTS WERE CALCULATED TO INFLUENCE INVESTORS ............................ 7

IV.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THAT HONDA "MADE" AMERICAN HONDA'S CONSUMER-MARKETING STATEMENTS ................................................. 8

V.    CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE COLLECTIVE OR INDIVIDUAL SCIENTER ........................... 9

VI.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THE REVELATION OF NEW INFORMATION THAT CAUSED A PRICE DROP ........................................................................ 11

CONCLUSION .............................................................................................................. 13

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

**TABLE OF AUTHORITIES**

**Page(s)**

*In re Amgen Inc. Sec. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008)...................................................................12

*In re Apple Inc. Sec. Litig.*,
  No. 19-cv-02033-YGR, 2020 WL 2857397
  (N.D. Cal. June 2, 2020)...................................................................................7

*Bien v. LifeLock Inc.*,
  No. 14-cv-00416-PHX-SRB, 2015 WL 12819154
  (D. Ariz. July 21, 2015) *aff'd sub nom In re Lifelock*,
  690 F. App'x 947 (9th Cir. 2015)...................................................................7

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008)...................................................................3

*In re BofI Holding, Inc., Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020)...................................................................12

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002)...................................................................3, 6

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal. 2012)...................................................................10

*Carter-Wallace, Inc. v. Hoyt (In re Carter-Wallace, Inc.)*,
  150 F.3d 153 (2d Cir. 1998)...................................................................7

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
  100 F. Supp. 2d 1086 (C.D. Cal. 1999)...................................................................4

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
  890 F.3d 60 (2d Cir. 2018)...................................................................2

*In re ChinaCast Educ. Corp. Sec. Litig.*,
  809 F.3d 471 (9th Cir. 2015)...................................................................10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d. Cir. 2014)...................................................................1

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
  22 F.4th 1 (1st Cir. 2021)...................................................................6

- ii -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

*Di Donato v. Insys Therapeutics Inc.*,
No. 16-cv-00302-PHX-NVW, 2017 WL 3268797
(D. Ariz. Aug. 1, 2017) ............................................................................ 7

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................... 13

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
No. 21-15604, 2023 WL 5496507 (9th Cir. Aug. 25, 2023) ................... 10

*In re Equifax Inc. Sec. Litig.*,
357 F.Supp.3d 1189 (N.D. Ga. 2019) ...................................................... 6

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ................................................................................. 9

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) .................................................................. 12

*In re Genius Brands Int'l, Inc.*,
No. 22-55760, 2024 WL 1473942 (9th Cir. Apr. 5, 2024) ...................... 3

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ................................................................. 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ................................................................................. 7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................... 3

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
No. 15-cv-857, 2016 WL 6782768
(C.D. Cal. Aug. 9, 2016) .......................................................................... 8

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ............................................................ 3

*In re Lifelock, Inc. Sec. Litig.*,
690 F. App'x 947 (9th Cir. 2017) ............................................................ 8

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ............................................................... 11

- iii -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

*Loos v. Immersion Corp.*,
    762 F. 3d 880 (9th Cir. 2014) ................................................................ 12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...........................................................12-13

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................. 6

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007) .................................................. 11

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v.*
    *Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................... 10

*Nursing Home v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ............................................................... 9

*Robb v. Fitbit Inc.*,
    216 F. Supp. 3d 1017 (N.D. Cal. 2016) ............................................... 12

*Sanchez v. Nintendo of Am. Inc.*,
    No. 20-cv-06929, 2022 WL 4099154
    (N.D. Cal. Sept. 7, 2022) ...................................................................... 13

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .................................................................. 3

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ..............................................................1-2

*Stoyas v. Toshiba Corp.*,
    No. 2:15-cv-04194-DDP-JC, 2022 WL 220920
    (C.D. Cal. Jan. 25, 2022) ....................................................................... 1

*In re Toyota Motor Corp. Sec. Litig.*,
    No. 10-cv-922, 2011 WL 2675395
    (C.D. Cal. July 7, 2011).........................................................................10

*Zhou v. Faraday Future Intell. Elec. Inc.*,
    No. 2:21-cv-09914-CAS-JCx, 2022 WL 13800633
    (C.D. Cal. Oct. 20, 2022)........................................................................10

- iv -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

# RULES

FED. R. CIV. P. 9(b) ...........................................................................................12

# STATUTES AND REGULATIONS

17 C.F.R. § 240.10b-5(b) ......................................................................................5

Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4j ........................................................................................1-2

# MISCELLANEOUS

SEC, "Investor Bulletin: American Depository Receipts" 1 (August 2012),
    available at https://www.sec.gov/investor/alerts/adr-bulletin.pdf ........................2

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Plaintiffs' Opposition embellishes the SAC but cannot obscure that its allegations fail to cure the FAC's defects that this Court found as to pleading (i) a domestic transaction and (ii) an actionable misrepresentation or omission; nor can the Opposition save the SAC from still falling far short, like the FAC, of adequately pleading (iii) scienter and (iv) loss causation.

**ARGUMENT**

**I.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT CURE PLAINTIFFS' FAILURE TO ADEQUATELY ALLEGE A DOMESTIC TRANSACTION**

"Though it is undisputed that Honda's ADSs are traded on the New York Stock Exchange," Plaintiffs still "must allege a domestic transaction." Order 9 (cited at Opp'n 1). To do so under the Ninth Circuit's controlling decision in *Stoyas*, Plaintiffs must provide "specific factual allegations regarding where the parties to the transaction incurred irrevocable liability," particularly the "relevant facts" of "who sold the relevant securities and how those transactions were effectuated." *Stoyas*, 896 F.3d at 949. Plaintiffs inexplicably fail to make the allegations necessary to comply with *Stoyas*.

Just because Honda ADSs trade on the NYSE does not mean Plaintiffs bought them there. Contrary to the Opposition, the Motion did not "concede" that Honda ADSs are traded "exclusively on the NYSE." Opp'n 3:2-6 (citing Mot. 2, which merely recites Plaintiffs' perfunctory allegation). As this Court observed: "Honda's ADSs are likely also available in foreign markets." Order 9. Additionally, ADSs can be acquired when "an investor who already holds the underlying non-U.S. securities, delivers them to the bank or its custodian in the non-U.S. company's home country." SEC, "Investor Bulletin: American Depository Receipts" at 1 (August 2012), available at https://www.sec.gov/investor/alerts/adr-bulletin.pdf (cited at *Stoyas*, 896 F.3d at 940). If accomplished this way, Plaintiffs' ADS purchases likely were *not* domestic. *See Stoyas*, 2022 WL 220920, at *4-5 (holding that plaintiff

- 1 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

"purchased the ADRs in a foreign transaction" where traders "executed the purchase of common stock for conversion [into ADRs], on behalf of" the plaintiff); Mot. 6:14-22; *see also* Tr. 7:18-21 (Plaintiffs' counsel admitting Plaintiffs would have to "contact their brokers to find out who cleared the transaction").

*Morrison*'s "disjunctive" domesticity test (Opp'n 2:24-3:2) does not mean that just because Honda's ADSs are listed and *often* traded on a national exchange Plaintiffs need not plead specific factual allegations that Plaintiffs' *own transactions* occurred in the United States. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179-80 (2d. Cir. 2014) (rejecting plaintiffs' "listing theory" as "irreconcilable with *Morrison*" because *Morrison*'s domesticity test focuses on "the location *of the securities transaction* and not the location of an exchange") (emphasis in original). By merely quoting *Morrison*'s shorthand statement of the domestic-transaction test, *Choi* did not hold otherwise. Opp'n 2:24-3:2. Like *Stoyas*, *Choi* focused on whether "irrevocable liability is incurred in the United States," regardless of the exchange location. *Choi*, 890 F.3d at 67.

Under *Stoyas*, Plaintiffs must allege more "specific fact[s]" than superficial incantation of "on the New York Stock Exchange" to plead a domestic transaction. 896 F.3d at 949. Plaintiffs' inability or unwillingness to do so is fatal to their claims.

## II.    CONTRARY TO THE OPPOSITION, THE SAC DOES NOT CURE PLAINTIFFS' FAILURE TO ADEQUATELY ALLEGE THAT ANY STATEMENT WAS FALSE OR MISLEADING

Contrary to the Opposition, the SAC does not "adequately plead[] falsity" under the PSLRA merely by identifying "each statement" and "the reason[s]" Plaintiffs assert the statements were misleading. Opp'n 4:19-21. Critically, Plaintiffs' "reasons" must arise from particularized facts plausibly supporting that the statements were false or misleading when made. *See* Order 7:2-8:19. Yet, the Opposition does not dispute that Plaintiffs' falsity theory is unchanged in the SAC — i.e., Plaintiffs argue that "the description of the Idle Stop feature affirmatively

- 2 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

created an impression that the Idle Stop would be free of defects in every vehicle with the feature." Order 12:20-22; *see* Mot. 8:4-7. Dismissal, therefore, is again required because, as this Court has already held: "That is not a plausible allegation." Order 12:22 (citing authorities that product descriptions are not misleading despite product issues).

Characterizing the challenged statements as "unqualified" or "unequivocal" (Opp'n 4:22, 5:16) does not convert them into guarantees of safety or performance. The Court, moreover, has already found generalized statements about safety and technological advancement to be inactionable "puffery." Order 10:7-22, 11:6-10.

The Opposition is also wrong (Opp'n 6:5-18) that Defendants came under a duty to disclose the alleged defect just by speaking about the Idle Stop. Unlike here, Plaintiffs' authorities involve statements directly contradicted by omitted information such that they "affirmatively create[d] an impression of a state of affairs [materially different] from the one that actually exists." *Brody*, 280 F.3d at 1006; *see, e.g.*, *Schueneman*, 840 F.3d at 707-08 (statements citing animal studies for drug's safety and likely FDA approval failed to disclose FDA negotiation over one study showing carcinogenic side-effect); *Berson*, 527 F.3d at 987 (statements touting backlog as "consist[ing] of anticipated revenues" misleading because undisclosed stop-work orders meant revenue likely unrealizable); *Genius Brands*, 2024 WL 1473942, at *6 (statements represented that "Genius had not retained any person or any entity to promote its securities, when Genius had in fact done so"); *LifeLock*, 780 F. App'x at 483 (statements touted "real-time" alerts when over 70% sent a week or more later); *Khoja*, 899 F.3d at 1010 (statements touted positive interim results without disclosing that results were "unreliable").

Plaintiffs' implausible theory requires dismissal regardless of whether Plaintiffs alleged a "pervasive" defect. Opp'n 6:22-25. Because the challenged statements merely describe the Idle Stop feature and did not warrant that the feature would be free of defects, the statements could not be rendered false or misleading

- 3 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

based on any defect with the feature. *See* Mot. 11-14. Even so, the SAC's new allegations still fail to allege the defect was "pervasive," let alone at the time any statements were made. *See id.*

The Opposition's arguments regarding the "materiality" of the alleged misstatements (Opp'n 7-8) fail to point to particularized facts plausibly showing the alleged *defect* had manifested to a material degree when the statements were made. *See* Mot. 8-14. Plaintiffs incorrectly state that Defendants "conflate 'symptoms' of the defect with the Defect itself." Opp'n 8:18-19. In fact, Plaintiffs' falsity theory is grounded in just one "symptom" — the engine's failure to restart after an idle stop. *See* SAC ¶119 ("the engine does not reliably 'start back up by itself'"), ¶121 ("drivers will not experience 'quicker restarts'"), ¶123 ("engine would not necessarily 'automatically restart'"), ¶125 ("engine would not reliably restart after an 'idle stop'"), ¶128 ("drivers unable to operate their vehicles following an 'idle stop'"). Any other Idle Stop issues are irrelevant.

The Opposition argues that "issues began during development," but cites documents from long after the challenged statements were made — namely, American Honda's post-investigation service bulletins announcing software updates. *See* Opp'n 922:25 (citing, *e.g.*, SAC ¶¶98, 112 (referring to March 30 and September 20, 2022 TSBs (Exs. 26, 33))). Such "fraud by hindsight" allegations cannot show any statement was false when made. *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1098 (C.D. Cal. 1999). Plaintiffs cite no authority to the contrary.

Moreover, the Opposition does not refute (Opp'n 8:17-10:2) that none of the alleged manufacturer communications from before July 30, 2019 addresses the alleged engine-restart defect. *See* Mot. 9 (explaining engine-restart issue first discussed on July 30, 2019 (SAC ¶¶92-93), and earlier TSBs (SAC ¶¶82-91) concern generalized or routine issues). Further, the Opposition cannot point to any allegation that the issue manifested in the 2019 Pilot, 2019 Passport, or 2020 Odyssey at the

- 4 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

time challenged statements about those models were made. *See* Opp'n 9:17-10:2; Mot. 10:10-26.

The Opposition relies on the total population of the relevant models or "affected vehicles" shown in service bulletins (Opp'n 10:7-18 (citing, e.g., SAC ¶85 n.12 (Ex. 10))), but those communications merely instruct dealers how to handle the issue *in the event* it materializes in a customer's vehicle. The referenced populations say nothing about the number of vehicles that actually *experienced* the alleged defect. *See* Mot. 12:24-13:6; Ex. 10 at 1. As the Opposition admits, the re-start issue presented only under "certain conditions." Opp'n 8:23-9:2.

Plaintiffs cannot dispute that the 221 NHTSA complaints — the only well-pleaded facts showing when the alleged defect occurred — were made *after* the challenged statements. Opp'n 10-11; *see* Mot. 10. Plaintiffs' reliance on 2016 and 2017 TSBs (Opp'n 10:26-11:6 (citing SAC ¶¶85-86, 89)) is in vain because, as discussed, those TSBs do not address the engine-restart issue.

Although the Opposition repeats that the NHTSA investigation "is still ongoing" (Opp'n 11:10-27), Plaintiffs cannot point to any allegation that the investigation progressed past NHTSA's "preliminary evaluation" of "the potential problem." Mot. 11:14-22 (quoting ODI Resume (Ex. 28)). The Opposition also fails to explain how the allegation that some other selected manufacturers issued recalls based on fewer complaints (Opp'n 11:6-9) pleads with particularity the scope of the alleged defect here. *See* Mot. 13:7-12.

Additionally, the Opposition fails to explain how the challenged statements in product brochures and press releases — which merely describe the Idle Stop feature or "list" the Idle Stop as a feature — would have been material to investors in deciding whether to purchase Honda securities. Opp'n 7:9-8:16. Tellingly, Plaintiffs' materiality arguments do not even mention the challenged *statements* and, instead, assert that investors would have considered the alleged *defect* material because it generally concerns "quality" or "safety." Opp'n 7:20-25. Characterized

- 5 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

that way, such statements are mere "puffery."  Order 10:7-11:10.  And "neither Section 10(b) nor Rule 10b–5 'create[s] an affirmative duty to disclose any and all material information.'… Rather, '[d]isclosure is required under these provisions only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading.'" Order 11 (quoting *Matrixx*, 563 U.S. at44).

Here, the statements describing Idle Stop are not misleading because, regardless of whether a defect existed, they did not "create an impression of a state of affairs that differs in a material way from the one that actually exists."  Order 11 (quoting *Brody*, 280 F.3d at 1006).  Plaintiffs' cases (Opp'n 7-8) are thus inapposite because, unlike here, the statements there were directly contradicted by the allegedly omitted information.  *See, e.g.*, *Carbonite*, 22 F.4th at 8 (holding statements that product improves "performance for backing up virtual environments" false because the product "could not back up virtual environments").

Plaintiffs' cases are also inapposite because they concern statements made *to investors* and concerned products or segments so important to the defendants' businesses that they would have materially impacted investment decisions.  *See, e.g.*, *Carbonite*, 22 F.4th at 8 (statements material "in evaluating Carbonite as an investment" where defendants repeated at investor conferences that product was "really important" for the business and company's "most senior officers promoted this new product to investors as shoring up one of the company's weaker market segments"); *Litwin*, 634 F.3d at 720 (SEC filings concerned business segment that "plays such an important role in Blackstone's business and provides value to all of its other asset management and financial advisory services, [that] a reasonable investor would almost certainly want to know information related to that segment that Blackstone reasonably expects will have a material adverse effect on its future revenues"); *Equifax*, 357 F. Supp. 3d at 1224 (statements about "a core aspect of Equifax's business" material); *Matrixx*, 585 F.3d at 1179 (statements touting product that "retail partners have come to rely on ... for their respective bottom lines").

- 6 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

### III.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THAT THE CONSUMER-MARKETING STATEMENTS WERE CALCULATED TO INFLUENCE INVESTORS

The Opposition does not dispute (Opp'n 12 n.5) that an actionable misstatement must be "reasonably calculated to influence those who trade securities." *Apple*, 2020 WL 2857397, at *17 (cited at Opp'n 12:15-18) (quoting *McGann*). *Di Donato*, *LifeLock*, and Defendants' other authorities are not focused on the medium *per se*. But faithful to Section 10(b) they require "'a connection between the misrepresentation or omission and the purchase or sale of a security'" (*LifeLock*, 690 Fed. App'x at 949 n.2 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014))), such that "reasonable investors would base their investment decisions on" the statements (*LifeLock*, 2015 WL 12819154, *9).

Plaintiffs' arguments about *Defendants'* connection to the challenged statements (Opp'n 14:3-13, 14:24-15:4) ignore the required connection between the challenged statements and investors. Alleging "who (AHM) issued the misstatements" does not resolve "'to whom'" the statements were made. Opp'n 14:14-20 (quoting *Di Donato*, 2017 WL 3268797, at *16). Evidently recognizing this, Plaintiffs attempt to recast the challenged consumer-marketing statements as "likely seen" by investors. Opp'n 13:5.

*Carter-Wallace* does not undermine *LifeLock*, at a minimum because, contrary to Plaintiffs' assertion, the challenged statements here are not "akin" (Opp'n 15:7-9) to "detailed drug advertisements using technical jargon and published in sophisticated medical journals" (*Carter-Wallace*, 150 F.3d at 156). *See* Ex. B (listing statements challenged here). Consistent with *LifeLock*, the Second Circuit accepted that technical materials could be statements "in connection with" the purchase of securities, but only if the materials "*were used by market professionals* in evaluating the stock of the company." *Carter-Wallace*, 150 F.3d at 156-57 (emphasis added). The SAC contains no such allegation.

- 7 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

The challenged consumer-marketing materials here "might have some probative value in an action based on consumer protection laws, but they have none in a case alleging investor fraud." *LifeLock*, 690 F. App'x at 953-54.

## IV. CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THAT HONDA "MADE" AMERICAN HONDA'S CONSUMER-MARKETING STATEMENTS

The Opposition (at 15-16) fails to identify sufficient allegations of Honda's purported "ultimate authority" over American Honda's challenged statements. *See Janus*, 564 U.S. at 142 (holding statement "maker" must have "ultimate authority over the statement, including its content and whether and how to communicate it").

Contrary to the Opposition's suggestion, the SAC nowhere alleges Honda's "involvement in [American Honda's] day-to-day operations," much less that Honda "directed [American Honda's] public statements." Opp'n 16:1-4 (citing SAC ¶¶27-28, 30-31). That two Honda executives also served at American Honda (SAC ¶¶27-28) does not show Honda's authority over American Honda's statements. *See Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, No. 15-cv-857, 2016 WL 6782768, at *11 (C.D. Cal. Aug. 9, 2016) (dismissing "conclusory" scienter allegations based on overlapping executives).

Nor is "ultimate authority" established by Honda's "100% ownership and voting interest in American Honda" (SAC ¶31). *See Elbit*, 917 F. Supp. 2d at 226 (cited at Opp'n 16) (acknowledging "a parent-subsidiary relationship does not by itself create a presumption of agency"). Or by allegations that Honda "established the Acura Brand" and U.S. "sales network" (SAC ¶30). *Elbit*, 917 F. Supp. 2d at 226 (holding "shared brand identity" insufficient to find subsidiary spoke as parent's agent).

Unlike Plaintiffs' examples of "ultimate authority" (Opp'n 16:4-10), the SAC does not allege: that Honda "reviewed and finalized" the statements or had "final sign-off" (*Pfizer*, 819 F.3d at 657); that American Honda "received an instruction"

- 8 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

from Honda's CEO to make the statements (*Barclays*, 56 F. Supp. 3d at 556, 559); or that Honda "interven[ed]" and "direct[ed]" the statements (*Elbit Sys.*, 917 F. Supp. 2d at 226).

## V. CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE COLLECTIVE OR INDIVIDUAL SCIENTER

The Opposition significantly understates the scienter standard (and mischaracterizes *Nursing Home*) as requiring only that information contradicting the challenged statements be "available" to Defendants. Opp'n 16:14-16 (quoting *Nursing Home*, 380 F.3d at 1230); *but see* Mot. 16:6-8 (SAC must plead facts showing "intent to deceive, manipulate, or defraud") (quoting *Ernst*, 425 U.S. at 193 n.12). The Ninth Circuit in *Nursing Home* criticized pleading the mere availability of contradictory information, and found scienter only where "top executives admit to having monitored the [information]." 380 F.3d at 1230-31.

The Opposition exaggerates the SAC as alleging that the engine-restart issue in fact "*was* discussed" at meetings by "corporate management" (Opp'n 17:22-25 (emphasis added)), but this does not appear in the SAC. *See, e.g.*, SAC ¶103 ("[T]he Idle Stop defect is precisely *the type* of issue that senior executives addressed during these monthly meetings.") (emphasis added). The SAC also does not allege with particularity which members of "corporate management" purportedly attended such meetings. *Id.*

Plaintiffs in any event fail to rebut (Opp'n 16:17-17:14) that, before all but one challenged statement, no management communications acknowledged an engine-restart issue. *See* Mot. 9:13-28, 16:22-17:9. That one statement said nothing about the Idle Stop function, announcing only that "all 2020 Odyssey minivans now come standard with Idle Stop." *See* SAC ¶124 (citing August 12, 2019 brochure).

Agency principles (*see* Opp'n 18:18-19:9) do not allow Plaintiffs to skip over the SAC's failure to identify "any individual" employee or agent who, at the time of the challenged statements, acted with intent to deceive, manipulate, or defraud. Mot.

- 9 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

17:19-27 (quoting *Hart*, 2017 WL 5635424, at *14); *see* Opp'n 18:21-24 (speculating that various unidentified agents either knew *or merely "had access to"* information purportedly contradicting challenged statements (emphasis added)). Plaintiffs' authorities do not hold otherwise. *ChinaCast* found that the "CEO Chan possessed the requisite scienter." 809 F.3d at 474-75. Plaintiffs' reliance on *Toyota* (Opp'n 18-19) ignores that Toyota's Vice President "admitted in an e-mail that Toyota had been covering up the true nature and severity of the unintended acceleration defects." *In re Toyota Motor Corp. Sec. Litig.*, No. 10-cv-922, 2011 WL 2675395, at *2-3 (C.D. Cal. July 7, 2011). The Ninth Circuit in *Glazer* in fact never adopted the collective-scienter theory Plaintiffs advance here. *Glazer*, 549 F.3d at 745 (cited at Opp'n 19:10-14) (stating: "We need not decide whether we agree with" the proposed "hypothetical").

The Opposition cannot point to allegations that sales of the affected models were so significant that the alleged defect would be "obvious" to Defendants' officials. Opp'n 18:4-8 (relying on *NVIDIA*, 2023 WL 5496507, at *22 (finding scienter regarding "the source of *$1.126 billion* in company revenues") (emphasis added)). Plaintiffs also cannot point to allegations that the Idle Stop descriptions were "so important and so dramatically false" (Opp'n 19:10-20:2) that Defendants' officials must have known about it — particularly given that the engine-restart issue allegedly appeared in a minute fraction of vehicles "under certain conditions." Opp'n 8:23-9:1. Plaintiffs' other authorities finding scienter (Opp'n 19:10-20:2) involve fraud plainly more significant to the defendants' business. In *Zhou*, a startup e-car manufacturer with no sales misleadingly reported 14,000 vehicle backorders. 2022 WL 13800633, at *7. In *America West*, top executives and board members sold stock in transactions "dramatically out of line with their prior trading practices" while regulators threatened the airline with penalties. 320 F.3d at 938-39, 943 & n.21. In *Brown*, the defendant "maintained two sets of financial statements": "a presumably accurate set" for its Chinese regulator, and a "false and misleading" set for the SEC.

- 10 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

875 F. Supp. 2d at 1101.

Finally, far from a "cover-up" (Opp'n 18:11-17), American Honda reasonably directed service bulletins to dealers, who could implement those technical instructions, particularly because the communications addressed an issue that American Honda had yet "[t]o fully understand." Ex. 11 (March 10, 2017 TSB (cited at SAC ¶86)); *see also, e.g.,* Ex. 23 (February 13, 2020 TSB (cited at SAC ¶97)) (providing instructions to dealerships "[t]o better understand the cause" of customer complaints). The "cover-up" in *Nature's Sunshine Products* (Opp'n 18:15-17) was evidenced by the defendant's auditor "disput[ing]" the defendant's statements and "protesting the measures taken by [the defendant] to remedy" the statements' effects. 486 F. Supp. 2d at 1311. Here, by contrast, NHTSA announced its "Preliminary Evaluation" on June 3, 2022 not to reveal a cover-up but rather, in consultation with American Honda (SAC ¶¶110-11), to "determine the scope and severity of the potential problem." Mot. 18:21-24 (quoting Ex. 28 (ODI Resume)). In fact, the SAC does not allege any NHTSA finding of a reportable defect, let alone any injuries or need for a recall that Defendants purportedly covered up.

## VI.   CONTRARY TO THE OPPOSITION, THE SAC DOES NOT ALLEGE THE REVELATION OF NEW INFORMATION THAT CAUSED A PRICE DROP

Having identified a stock price drop, Plaintiffs attempt to concoct a suit by asserting correlation with purportedly corrective disclosures. Yet the Opposition fails to rebut (Opp'n 21:9-10) that the announcement of NHTSA's investigation cannot have corrected anything — and therefore cannot support loss causation — without any "subsequent corrective disclosure" confirming the results of the investigation. Mot. 19:22-27 (quoting *Lloyd*, 811 F.3d at 1210). It was also not news to the market that the restart issue had turned up in previous consumer complaints, including about other models with the same engine/transmission configuration. *See* Opp'n 21:11-13. Both *Cooper* and the prior (tellingly ignored) *Bolooki* actions cite

- 11 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

numerous complaints regarding all relevant models publicly filed with NHTSA well before the investigation announcement. *See* Ex. 42 (*Bolooki* Compl. ¶¶92-111); Ex. 43 (*Cooper* Compl. ¶¶124-34). And Plaintiffs cannot rebut that, months before NHTSA's announcement, an American Honda campaign publicly advertised warranty coverage for the Idle Stop-restart issue. Mot. 19:13-18.

Plaintiffs also cite nothing in *Cooper* about Defendants' purported "long-standing knowledge of the Defect" (Opp'n 21:16) that was not already touted in *Bolooki*. *See, e.g.*, Ex. 42 ¶215. Plaintiffs cannot sidestep their burden to plead disclosure of *new* information by mischaracterizing Defendants' argument as a "truth-on-the-market" defense. Opp'n 21:5-8 (citing *Amgen*, which required "corrective disclosures" (544 F. Supp. 2d at 1025)). And whether some *Cooper* plaintiffs supplied unspecified "personal knowledge" for the complaint does not make their copy-cat allegations revelatory. Opp'n 21:19-22.

The Opposition does not dispute that *Cooper* largely duplicates the earlier *Bolooki* allegations. Mot. 20:1-14. So while it may be possible to allege a corrective disclosure based on public information where "other market participants had not done the same analysis" (*BofI Holding*, 977 F.3d at 794, cited at Opp'n 21:27-22:2), any "risks" purportedly "revealed in stark detail" by *Cooper* had already "materialize[d]" (*see* Opp'n 20:23-21:5) with the *Bolooki* filing. *Robb* (Opp'n 21:3-4) does not help Plaintiffs, because it was uncontested there that the consumer complaint "revealed" a potential misstatement. *See* 216 F. Supp. 3d at 1033.

The Opposition also fails to explain how "the decline in [Honda's ADS] price was proximately caused by a revelation of fraudulent activity *rather than* by changing market conditions, changing investor expectations, or other unrelated factors." *Loos*, 762 F.3d at 887 (emphasis added); *Facebook*, 87 F.4th at 954 (settling that Rule 9(b) applies to loss-causation).

The Opposition ignores that the Honda ADS price *rose* by the next trading day after NHTSA's announcement. *See* Mot. 21:6-7; Ex. D (HMC Price and Volume

- 12 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Data); *contra* Opp'n 22:6-9 ("Honda's ADS price never recovered."). Plaintiffs' pre-*Facebook*, district-court authority (Opp'n 22:1-18 (relying on *Nathanson* and *UTStarcom*)) cannot rebut *Metzler* that a stock's quick recovery "persuasively" rebuts loss causation. Mot. 21:7-14 (quoting *Metzler*, 540 F.3d at 1065). The Opposition does not attempt to rebut the economic logic that a "far more plausible reason" for the Honda ADS price drop on September 29, 2022 was Honda's dividend payment the day before. Mot. 21:17-24 (quoting *Metzler*, 540 F.3d at 1065).

While the Opposition notes that the misstatements in *Metzler* involved "an extremely small percentage of defendants' overall operations" (cited at Opp'n 22:15-23:2) — approximately **1.1%** — the alleged misstatements here involve a far smaller percentage of Defendants' operations — approximately **0.1%** of Idle Stop-equipped models with a certain engine/transmission configuration, where "automobiles" is just one of three business lines within the Honda "conglomerate." SAC ¶¶2, 117.

*        *        *

Plaintiffs' footnote request (Opp'n 23 n.6) for leave to amend (again) should be denied. Under any iteration, Plaintiffs' suit remains essentially a product-liability action grounded on openly publicized customer complaints and generalized vehicle-marketing statements — not misstatements or omissions related to securities. Plaintiffs' "failure to cure deficiencies" in their allegations, despite clear direction from this Court as to the FAC's deficiencies, confirms that the SAC "could not be saved by amendment." *Eminence Cap.*, 316 F.3d at 1052 (Opp'n 23 n.6). Plaintiffs' perfunctory footnote request provides "neither argument nor proposed amendment" to conclude otherwise. *Sanchez v. Nintendo of Am. Inc.*, No. 20-cv-06929, 2022 WL 4099154, at *3 (N.D. Cal. Sept. 7, 2022).

## CONCLUSION

For the foregoing reasons and those stated with Defendants' Motion, the SAC should be dismissed in its entirety, with prejudice.

- 13 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

Respectfully submitted,

Dated:        May 3, 2024                    WHITE & CASE LLP

By: */s/ Bryan A. Merryman*
Bryan A. Merryman

*Attorneys for Defendants*
Honda Motor Co., Ltd. and
American Honda Motor Co., Inc.

- 14 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,994 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 3, 2024                    By: */s/ Bryan A. Merryman*
                                                    Bryan A. Merryman

- 15 -

Honda Motor Co., Ltd. and American Honda Motor Co., Inc.'s
Reply Memorandum in Support of their Motion to Dismiss the Second Amended Class Action Complaint;
2:23-cv-00794-WLH-AGR